## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SECRETARY OF LABOR JULIE A. SU**[1] | : | **CIVIL ACTION** |
| ***United States Department of Labor***, | : | |
| ***Plaintiff***, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **NURSING HOME CARE MANAGEMENT INC., et al.,**: | | |
| ***Defendants.*** | : | **NO.  21-cv-02583** |

## MEMORANDUM

**Kenney, J.**                                                                          **May 12, 2023**

Plaintiff Julie A. Su, Secretary of Labor, United States Department of Labor ("Plaintiff") brings this action against Defendants Prestige Home Care Agency ("Prestige") and Alexander Dorfman ("Dorfman"), (together referred to as "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA") that resulted in the inadequate compensation of Defendants' employees.

Presently before the Court are fully briefed cross-motions for summary judgment. ECF Nos. 86, 88, 90, 93, 98, 103. For the reasons set forth below, Plaintiff's Motion for Summary Judgment (ECF No. 86) is granted in full, and Defendants' Motion for Partial Summary Judgment (ECF No. 88) is denied. Appropriate Orders will follow.

## I.     BACKGROUND

Defendant Prestige is a domestic homecare business located in Philadelphia (ECF No. 86-3, Concise Statement of Stipulated Material Facts ("CSSMF") ¶¶ 2-3), and Defendant Dorfman is Prestige's President and Finance Manager. *Id.* ¶ 9. Prestige is an enterprise engaged in commerce or in the production of goods for commerce per Section 3(s)(1)(A) of the FLSA. *Id.* ¶ 6; *see* 29

---

[1] Ms. Su is hereby substituted as Plaintiff in this matter. *See* Fed. R. Civ. P. 25(d).

U.S.C. § 201, et seq., § 203(s)(1)(A). All of Prestige's employment and payment practices and policies at issue have remained the same since November 9, 2015. *Id.* ¶ 46 (referring to statement made by Defendant Dorfman on April 15, 2022). The relevant time period for Plaintiff's current calculation of back wages and liquidated damages due covers the period from November 9, 2015 through May 27, 2022, and all statements of fact referred to herein relate to that time period unless stated otherwise. *Id.* ¶ 1.

Prestige employs home health aides who are assigned to various Prestige clients. *Id.* ¶ 25. Before a home health aide is assigned to a client, coordinators correspond with the client to review the care plan and to create a schedule of the days and times an aide will provide care to the client. *Id.* The workday of a home health aide working for Prestige may begin anywhere between 12:00 a.m. and conclude at any time before 11:59 p.m. on the same day. *Id.* ¶ 22. Some of these home health aide employees travel to more than one client's home between 12:00 a.m. and 11:59 p.m. on the same day. *Id.* ¶ 26. Some of these employees travel from Prestige's office to a client's home at any time between 12:00 a.m. and 11:59 p.m. on the same day. *Id.* ¶ 27. Some of Prestige's office employees also provide direct care work for Prestige's clients in addition to working in Prestige's office. *Id.* ¶ 44. These employees who perform "dual services" are paid two separate payrates. *Id.* ¶ 45.

During the relevant time period, Prestige did not pay employees for either (1) time spent traveling between Prestige's clients on the same day (*id.* ¶ 28) or for (2) time spent traveling between Prestige's office and Prestige's clients on the same day. *Id.* ¶ 30. Prestige did not keep records of this travel time (*id.* ¶¶ 29, 31) and did not require its direct care workers to record the amount of time spent traveling between clients on the same day, or the amount of time spent traveling from Prestige's office to a client's home on the same day. *Id.* ¶¶ 41-42. Defendant

Dorfman set the employees' rate of pay and established the policy to not pay Prestige employees for travel time. *Id.* ¶¶ 13, 20. Defendant Dorfman was involved in establishing, implementing, and approving Prestige's policies regarding employee compensation and timekeeping policies. *Id.* ¶¶ 11, 13, 18-19. Defendant Dorfman oversaw the day-to-day operations of Prestige, including the preparation of payroll. *Id.* ¶ 10.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on June 7, 2021, alleging violations of the FLSA, and requesting the following: (1) an injunction to permanently enjoin Defendants from violating the FLSA; (2) a judgment finding Defendants liable for unpaid minimum wage and overtime compensation; (3) an injunction restraining Defendants from withholding the amount of unpaid minimum wages and overtime compensation; and (4) an award of prejudgment interest in the event liquidated damages were not awarded. ECF No. 1 at 5-6. Defendants moved to dismiss the case on October 25, 2021 (ECF No. 7), and the Court denied that motion. ECF No. 8.

Plaintiff moved for summary judgment on January 5, 2023 (ECF No. 86), seeking summary judgment on each of the following: (1) Defendants' employees are covered under the FLSA and entitled to overtime protections; (2) Defendant Dorfman is jointly and severally liable for the FLSA violations as an "employer"; (3) Defendants violated Section 7(a) of the FLSA; (4) Defendants violated Section 11(c) of the FLSA; (5) Defendants' overtime violations were willful; (6) Defendants are liable for back wages in the amount of $3,538,360.72 for the period of November 9, 2015 to May 27, 2022; (7) Defendants are liable for an equal amount of liquidated damages; and (8) Defendants' violations warrant permanent injunctive relief. ECF No. 86-2 at 2.

Defendants moved for partial summary judgment on January 5, 2023, requesting that the Court find as a matter of law that (1) travel time is not compensable for employees who were off duty; and (2) Prestige did not commit a recordkeeping violation. ECF No. 88-2 at 4-5.

## III.  <u>LEGAL STANDARD</u>

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Indeed, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Owens Corning*, 679 F.3d 101, 105 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see also* Fed. R. Civ. P. 56(c).

4

The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252. The non-movant opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

When determining the existence of a genuine issue of material fact, a court must "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court need only decide whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

## IV.   <u>DISCUSSION</u>

For the reasons set forth below, Plaintiff is entitled to summary judgment on all eight issues raised by Plaintiff's summary judgment motion. The Court denies Defendants' Motion for Partial Summary Judgment in full.

A.    **Defendants' employees are covered under the FLSA and are entitled to overtime protections**

An employee is entitled to overtime compensation, of a rate not less than one and one-half times their regular payrate, when they work for longer than 40 hours in a week and are either "engaged in commerce or in the production of goods for commerce" or "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). Plaintiff argues that Defendants' employees are entitled to the overtime protections of the FLSA because the employees are both (1) themselves engaged in commerce; and (2) employed in an enterprise engaged in commerce. ECF No. 86-2 at 3. Defendants do not dispute this finding. ECF No. 90 at 2.

Defendants' employees themselves are engaged in commerce per 29 U.S.C. 202(a)(5) which states that "the employment of persons in domestic service in households affects commerce." The parties have stipulated that Defendants' employees engaged in a domestic homecare business, and that Defendants employed persons in domestic service for profit. ECF No. 86-3, CSSMF ¶¶ 2, 7.

Defendants are also employed in an enterprise engaged in commerce. An enterprise engaged in commerce is an enterprise that has an annual gross revenue of at least $500,000, and that has employees either "engaged in commerce or in the production of goods for commerce" or "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A)(i-ii). The parties have stipulated that Prestige had an annual gross volume of sales made or business done in an amount greater than $500,000, and that Prestige is a covered enterprise under 29 U.S.C. § 203(s)(1)(A). ECF No. 86-3, CSSMF ¶¶ 5-6.

As such, as a matter of law, Defendants' employees are covered under the FLSA and are entitled to overtime protections.

### B.    Defendant Alexander Dorfman is jointly and severally liable for the FLSA violations as an "employer"

Plaintiff argues, and Defendants conceded at oral argument, that Defendant Dorfman is jointly and severally liable for any violations under the FLSA. ECF No. 105, Feb. 14, 2023 Hr'g. Tr. 21:21-25.

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Third Circuit precedent instructs district courts to examine whether a joint employment relationship under the FLSA exists by considering the economic realities of the work relationship, and whether the alleged employer has "(1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 469 (3d Cir. 2012). Here, the parties have stipulated that Defendant Dorfman, as the President and Finance Manager of Prestige, had the authority to: hire and fire Defendants' employees; oversee the day-to-day operations of Prestige, including the preparation of payroll; establish, implement, or approve Prestige's policies regarding employee compensation and timekeeping policies; make decisions relating to compensation policies affecting the employees; set employees' rate of pay; and make decisions relating to the policies concerning recordkeeping of hours worked by home health aides. ECF No. 86-3, CSSMF ¶¶ 9-19.

Therefore, as a matter of law under Third Circuit precedent and the FLSA, Defendant Dorfman is a joint employer who is jointly and severally liable for violations by Prestige.

C.      **Defendants violated Section 7(a) of the FLSA**

Plaintiff argues that Defendants violated Section 7(a) of the FLSA, codified at 29 U.S.C. §

207, which requires an employer to pay an employee "for a workweek longer than forty hours . . .

at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C.

§ 207(a)(1); ECF No. 86-2 at 6. Plaintiff argues that Defendants failed to pay their employees the

requisite overtime pay by: (1) failing to pay employees for travel time between job sites; (2) failing

to pay for all compensable breaks of 20 minutes or less; (3) paying overtime for hours worked over

80 in a biweekly pay period rather than for hours worked over 40 in a weekly period; and (4)

paying "dual service" employees for their office administrative work hours and client visit hours

separately. ECF No. 86-2 at 7-11. The Court will address each of Plaintiff's four arguments related

to Section 7(a) in turn.

1.      <u>**Defendants did not properly pay employees for travel time**</u>

There is no dispute that Prestige did not pay employees for either (1) time spent traveling

between Prestige's clients on the same day (ECF No. 86-3, CSSMF ¶ 28) or for (2) time spent

traveling between Prestige's office and Prestige's clients on the same day. *Id.* ¶ 30. Prestige has

always taken a position that, given its business model and how it structured home visits, neither

the law nor regulations require Prestige to pay its home health care workers for travel time between

one client's home and another client's home despite the visits taking place on the same workday.

The material facts as to Prestige's business model are not in dispute. So, what is before the Court

is an issue of law as to whether travel time between clients' homes, and between the office and

clients' homes, performed on the same workday, is compensable.

Plaintiff relies on the "continuous workday doctrine" (29 C.F.R. § 785.38) which states

that "[t]ime spent by an employee in travel as part of his principal activity, such as travel from job

site to job site during the workday, must be counted as hours worked," and argues that the employees' travel time is compensable because the travel is part of an employee's principal activity during a "continuous workday" and constitutes "hours worked." ECF No. 86-2 at 7-8; ECF No. 98 at 1. Defendants argue that travel time is off-duty time and therefore not compensable work, relying on the Portal-to-Portal Act of 1947 (29 U.S.C. §§251-262) which provides that an employer need not compensate an employee for "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, (2) and activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254; ECF No. 88-2 at 5-6.

The Supreme Court has held that an employer must compensate employees for activities performed before or after the regular work shift that are an "integral and indispensable" part of the principal activities. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005) (""[A]ny activity that is 'integral and indispensable' to a 'principal activity' is itself a "principal activity" under § 4(a) of the Portal-to-Portal Act."); *see also De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 371 (3d Cir. 2007) ("Activity must be 'work' to qualify for coverage under the FLSA, and that 'work,' if preliminary or postliminary, will still be compensable under the Portal–to–Portal Act if it is 'integral and indispensable' to the principal activity."). Therefore, the crux of this travel time issue is whether the travel of Prestige's employees between job sites is "integral and indispensable" to the employees' principal activities.

"[A]n activity is not integral and indispensable to an employee's principal activities unless it is an intrinsic element of those activities and one with which the employee cannot dispense if he

is to perform those activities." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 35 (2014). Travel is a necessary, integral, and indispensable part of a home health aide's principal activities whose principal activities necessarily take place in various clients' homes. If Prestige's *home* health aide employees did not travel, then they could not provide their services of caring for clients in clients' *homes*. It borders on the disingenuous to argue otherwise. Prestige's employees are out delivering services, traveling from client to client, on behalf of Prestige. Even without law or regulations, to not pay for the travel time that is being invested on behalf of an employer would be wholly unreasonable. In fact, Defendants even seem to admit this by positing that their business model allows them to skirt this basic principle. Defendants argue that because their traveling aides can make their own schedules and create blocks of time during the continuous work day where they are "free" to do other things, Defendants are exempted from this rule of paying for the travel time of their traveling, home health aides. Instead of relying on comprehensive statistics of employees' travel time, Defendants instead episodically point to three employees who had gaps of one hour, three and a half hours, and four hours between client visits in the same day, and therefore had time to work other jobs or run errands. ECF No. 90 at 8-9 n.6.

Defendants do not point to statutory law, regulations, or case law to support their position. In fact, from the outset of this litigation and until summary judgment briefing, the cornerstone legal support for Defendants' position on the issue of travel time compensation was based on their argument that the Department of Labor set forth conflicting positions on the compensability of travel time. They highlighted this argument at the court hearing held on November 1, 2022 in which defense counsel stated that an Opinion Letter issued by the Department on December 31, 2020 "***says, on this entire issue about commuting to and from work, you don't need to pay***" while the Department's website took "a completely different position with respect to what employers

need to do." ECF No. 80, Nov. 1, 2022 Hr'g Tr. 31:1-10; *see also id.* at 38:3-9 ("There are conflicting statements within the Department of Labor and conflicting policies on that. We've identified in an opinion letter, they say one thing, they say that's not a continuous workday, and the employer doesn't have to pay for travel time in that scenario. On their website, they're saying, well, you do have to pay for travel time in that scenario."); *see also id.* at 46:22-25 ("But what we can't get from that investigator is resolving the bigger issue, which is your opinion letter which is law says one thing, the guidance on the website says something else. What did you apply to this case?").

Using the December 31, 2020 Opinion Letter as the very foundation for their travel time position, Defendants noted at the hearing that the alleged discrepancy between the Department's policies was "obviously going to be at issue in summary judgment." *Id.* at 31:6-7. Defendants used this alleged discrepancy to argue for additional discovery. *See* Tr. 38:10-11 ("We want to know from the Department of Labor how they applied their policies to this case."); *see also* Tr. 39:8-11 ("[T]hese are questions and issues that have to be put forth before a 30(b)(6) deponent because we don't even know what methodology they're using, what policies they're applying to these facts.").

Finally, the Court asked defense counsel to hand up the Opinion Letter that "***says, on this entire issue about commuting to and from work, you don't need to pay***," because that would be sure evidence that the Department was treating the Defendants unfairly, and not applying the law uniformly as was being argued to the Court throughout the litigation by defense counsel. The Court also instructed defense counsel to submit the portion of the Department website at issue. ECF No. 80, Nov. 1, 2022 Hr'g Tr. 47:22-25. [2]

---

[2] At the November 1, 2022 hearing, defense counsel represented to the Court that both the Opinion Letter and website were attached as exhibits to Defendants' Motion for Reconsideration. ECF No. 80, Nov. 1, 2022 Hr'g Tr. 48:7-8. Finding no record of these exhibits on the docket after the

Upon review of these two sources, the Court noticed counsel that the two sources did *not* in fact take conflicting positions. ECF No. 79 at 1. The Opinion Letter, so heavily replied upon by Defendants, contemplated the non-compensable travel time of a teleworker during the COVID-19 pandemic who chose to work from both home and the office on the same day —a scenario which does not mirror the facts in this case surrounding traveling home health aides—while the website screenshot, consistent with Plaintiff's position in this case, stated that an employer must compensate an employee for travel time between homes of individuals receiving services. Upon learning that Defendants' foundation for their travel time position was itself without foundation, the Court ordered counsel for Defendants to provide and review with their clients the Notice, the Opinion Letter, and the website screenshot. *Id.* at 2. Since the Court's filing of that Notice, Defendants have completely dropped this strenuously argued, smoking gun position that, until then, had formed a core component for Defendants' adamant stance that they were not required under the law to pay their travelling home aides travel time. From the outset, Defendants had represented to the Court that the Department had conflicting policies on travel time as "evidenced" by this Opinion Letter and, as such, was not applying them in a uniform manner and, ergo, in an unfair and selective manner as to them. Now, notably, Defendants have omitted any mention of

_____

hearing, the Court then ordered defense counsel to identify where on the docket these documents were attached as exhibits. ECF No. 79. Following that Order, defense counsel emailed the Court that defense counsel had "misspoke when we advised Your Honor that the Opinion Letter and website screenshot were attached to the filing done in the evening the night before the argument." Email from B. Berman to Court, Nov. 4, 2022. Defense counsel informed the Court that counsel "brought the Opinion Letter to the hearing, and . . . emailed the website screenshot to the Court immediately thereafter copying counsel." *Id.*

The Court now attaches as Exhibit A to this Memorandum a PDF of the Opinion Letter, WHD Op. Letter FLSA 2020-19 (Dec. 31, 2020), https://www.dol.gov/sites/dolgov/files/WHD/opinion-letters/FLSA/2020_12_31_19_FLSA.pdf. The Court also attaches as Exhibit B the screenshot of the portion of the website at issue, emailed from defense counsel to the Court following the hearing, on November 1, 2022.

this argument as a basis to avoid summary judgment. Indeed, after the bottom dropped out of this "conflict" argument, Defendants did not miss a step, and carried forward with the same zeal in relying on their own insistence that they are correct and that the practicalities of the home healthcare industry could not support a contrary model. Defendants now are left to resort to inapposite case law, such as *Bridges v. United States*, 54 F.4th 703 (Fed. Cir. 2022), which they attempt to wedge into their business model. Defendants assert that they do not need to pay for travel time under their business model—despite being advised that they must keep records of, and pay for, the travel time of their traveling home health aides. Because Defendants went all in with their position, they did not keep records of, nor pay for, travel time. This all-in approach, leading to a failure to maintain precise records, now results in significant consequences under the law in this litigation—consequences Defendants seek to avoid by trying to now litigate damages without having the records they were required to maintain. *See infra* Section F for discussion on damages.

The travel of Prestige's employees is analogous to the compensable travel of the employees in *United Transportation Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109 (10th Cir. 1999). There, the Tenth Circuit held that the time spent by bus drivers shuttling to and from relief points at the beginning and end of their split shift periods was part of the drivers' principal activity (the driving of their shifts). *Id.* at 1119 ("'Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked.' 29 C.F.R. § 785.38. In our view, the shuttle time to and from relief points at either end of the split shift period is travel time which is 'part of [the drivers'] principal activity.'"). The Tenth Circuit distinguished this from the non-compensable time that the bus drivers spent shuttling to and from their first and last bus run of the day. *Id.* at 1120. This non-compensable travel was

commuting travel, *id.*, and is not the type of travel for which Plaintiff is asking for compensation in the case at hand.

It follows that Defendants' reliance on *Bridges v. United States*, 54 F.4th 703 (Fed. Cir. 2022) is misplaced because in *Bridges*, driving was not an essential part of the employees' jobs. The employees in *Bridges* were correctional officers who guarded inmates at a prison and could sign up to work a voluntary shift at a hospital only when a prison inmate was transferred to a local hospital for care. *Id.* at 704-05. The officer employees in *Bridges* were not assigned to travel between hospitals to provide prison-level security for different prisoners at different hospitals during a continuous workday—if this were the case, the facts would be analogous to the facts at issue here, and the officers' travel time between hospitals would be compensable. Whereas the travel between the prison and hospital in *Bridges* was irregular, travel between job sites for Prestige's employees is a necessary part of Defendants' business model predicated on providing aid to clients in their homes and is part of Prestige employees' continuous workdays. Further, whereas the prison guards in *Bridges* characterized their principal activities as only guarding inmates and providing security, and not travel (*id.* at 706), Plaintiff has made no such concession as "there is nothing irregular about Defendants' home health aides' travel between clients during the workday because travel is a necessary part of the activities Defendants employ them to perform." ECF No. 98 at 5. Prestige's traveling home health aides work continuous workdays, regardless of how Defendants try to characterize these employees' job descriptions.

Moreover, in determining whether an activity is compensable, the Supreme Court has considered how far removed the activity at issue is from the "productive activity" of the employee, and whether the activity at issue occurs during a workday. *See Alvarez*, 546 U.S. at 42. In *Alvarez*, the Supreme Court considered meat processing plant employees who don protective gear before

14

walking to the production floor. *Id.* at 31. There, the Court found that the time spent waiting to put on or take off the protective gear was not compensable under the FLSA, as this time was "two steps removed from the productive activity" of working on the assembly line. *Id.* at 42. However, the time that the employees spent walking between the changing area and assembly line area was compensable, as the walking occurred after the workday began and before it ended. *Id.* at 35, 37. Similarly, here, the activity at issue occurs after an employee's workday has begun; the travel at issue is not travel between an employee's home and a job site, but rather between clients' homes or between Prestige's office and a client's home. Defendants rely on the inaccurate premise that employees had large gaps of time between clients, setting forth the declarations of three employees who had gaps of one hour, three and a half hours, and four hours between client visits in the same day. ECF No. 90 at 8-9 n.6. However, Defendants' records show that over 75% of the employees' travel between client visits consisted of trips that were no more than two hours long. ECF No. 105, Feb. 14, 2023 Hr'g. Tr. 10:14-16. Defendants' records show that 32.85% of all trips were 20 minutes or less, 31.7% of all trips were between 21 minutes and one hour long, and 10.87% of all trips were between one and two hours long. *Id.* at 10:11-14. The travel at issue is not "two steps removed" from the productive activity of working with Prestige's clients in their homes.

Based on the foregoing, the travel time at issue is an integral and indispensable part of the employees' principal activities and is therefore compensable; no reasonable jury could find otherwise.

## 2. <u>Defendants failed to pay employees for all compensable breaks of 20 minutes or less</u>

"Rest periods of short duration, running from 5 minutes to about 20 minutes . . . must be counted as hours worked." 29 C.F.R. § 785.18; *see also Sec'y United States Dep't of Lab. v. Am. Future Sys., Inc.*, 873 F.3d 420, 425 (3d Cir. 2017) (finding it a "bright-line rule" that "if an

employer chooses to provide short breaks of five to twenty minutes, the employer is required to compensate employees for such breaks as hours worked."). Plaintiff directs the Court to Defendants' records which show that Defendants failed to compensate employees for break times of 20 minutes or less where employees worked multiple shifts at the same address. ECF No. 86-16, Jamail-Gutierrez Declaration ¶ 5. Defendants have not countered with any specific facts showing that there is a genuine issue for trial regarding this failure to pay for breaks. In fact, Defendants address this issue of compensable break times with only one sentence in their opposition brief, writing that such breaks are not compensable because "the DOL's theory of compensable break time also depends upon the application of the continuous workday doctrine which, under *Bridges*, does not apply here." ECF No. 90 at 8. However, *Bridges* does not relate whatsoever to the issue of whether rest periods are compensable. The Federal Circuit in *Bridges* held that employees' travel did not occur within a continuous workday, without discussing the compensability of rest periods that may have occurred within a continuous workday. *Bridges*, 54 F.4th at 708-09. Moreover, the Court has already discussed, *supra* Section C(1), why the facts and holding of *Bridges* are inapposite to this case, and why the continuous workday doctrine, as related to Defendants' employees' travel time, *does* apply here. Accordingly, the "bright-line rule" that employees must be compensated for breaks of 20 minutes or less applies here, and the record shows that Defendants failed to pay employees for such breaks.

### 3.     Defendants improperly paid overtime only when exceeding 80 hours in a biweekly period

The FLSA requires employers to pay employees at an overtime rate not less than one and one-half times the regular rate at which the employees are employed for workweeks longer than 40 hours. 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778. Plaintiff points to evidence showing that Defendants paid overtime only when hours worked exceeded 80 hours in a biweekly pay period,

and Defendants have provided no evidence that would show that there exists a genuine issue for trial on this matter.

Investigator Jamail-Gutierrez, who reviewed Defendants' time and pay records from November 1, 2015 through May 29, 2022, found that "Defendants' records showed that, for at least a portion of the relevant period, employees were only paid overtime after working eighty hours in a biweekly pay period, rather than after forty hours in a workweek." ECF No. 86-16, Jamail-Gutierrez Declaration ¶ 6. Further, Plaintiff has put forth specific records showing that Defendants' employees received no overtime pay for weeks in which they worked more than 40 hours. *See* ECF No. 86-24.

In response to Plaintiff's argument on this issue, Defendants argue that the testimony of Defendant Dorfman and three (of the over 1000) Prestige employees supports Defendants' position that they properly paid overtime for all hours worked over 40 in a workweek. ECF No. 90 at 10. Specifically, Defendants cite Defendant Dorfman's testimony that Prestige "pay[s] 1.5 from regular rate for time over 40 hours a week" (ECF 88-5, Ex. 10, Dorfman Dep., Tr. 186:8-10) and the testimony of Ms. Pardenik, Ms. Lukyanova, and Ms. Starossekova who stated that Prestige paid each of them 1.5 times their hourly rate for every hour worked over 40 in a workweek. ECF No. 90 at 10 (citing ECF 88-5, Ex. 6, Parednik Aff., ¶14; ECF 88-5, Ex. 7, Lukyanova Aff., ¶3; ECF 88-5, Ex. 8, Starossekova Aff., ¶18.). However, Defendants do not point to any actual pay records that refute Plaintiff's argument which is based on an analysis of Defendants' time and pay records from November 1, 2015 through May 29, 2022. Further, Defendants do *not* separate hours worked into individual workweeks when entering the hours tracked by employees on paper timesheets into Defendants' tracking software system. ECF No. 86-3, CSSMF ¶ 37-39; ECF 88-5, Ex. 10, Dorfman Dep., Tr. 97:1-11, 204:25-205:4.

It follows that because Defendants have failed to counter with any specific facts showing a genuine issue for trial, a reasonable jury could not find for Defendants on this issue. Defendants improperly paid overtime only when exceeding 80 hours in a biweekly period.

### 4.     Defendants failed to properly pay dual service employees

Defendants failed to properly pay administrative employees who also performed home care visits. Plaintiff argues that Defendants paid these dual services employees at two separate payrates and failed to combine these employees' total number of hours worked, resulting in a failure to pay the required overtime compensation. ECF No. 86-2 at 10-11. Defendants admit that dual service employees were paid at two separate payrates for hours worked, but state that this practice does not violate the FLSA. ECF No. 90 at 10. The Court does not dispute that overtime pay of dual service employees may be calculated by using the weighted averages of different payrates; Defendants put forth case law supporting such a calculation. *See* ECF No. 90 at 10 (citing *Gonzalez v. Bustleton Servs.*, No. CIV.A 08-4703, 2010 WL 1813487, at *4 (E.D. Pa. Mar. 5, 2010); *Parth v. Pomona Valley Hosp. Med. Ctr.*, 584 F.3d 794, 802–03 (9th Cir. 2009). However, Plaintiff points to payroll records which do not reflect the use of a proper overtime rate, or weighted average of different payrates, for dual service employees. ECF No. 86-23, Sample Pay Records of Office Employees. For example, the payroll record of Elvira Abramova, dated November 26-28, 2015, shows that Ms. Abramova worked in one role for 80 hours at a rate of 13 dollars an hour, for a total compensation of $1,040. Ms. Abramova worked in a second role for 32 hours during the same period, at a rate of nine dollars at hour, for a total compensation of $288. These two totals were simply combined for a total gross pay of $1,328, without implementing any overtime calculations, and confute Defendant Dorfman's testimony (ECF 88-5, Ex. 10, Dorfman Dep., Tr. 250:20-251:1) that Defendants used an "average overtime rate" in calculating employees' pay. ECF No. 86-23 at

3; *see also* ECF No. 86-16, Jamail-Gutierrez Declaration ¶ 9 ("Defendants' records show that some office (or administrative) employees worked 80 hours a bi-weekly pay period in the office but also performed home health care visits. Defendants did not combine the total amount of hours these dual role employees worked each pay period. Thus, these employees were not paid the correct FLSA halftime premium for all hours worked in excess of 80 in a single pay period (and by extension, over 40 in a single workweek.").

In response, Defendants merely cite Defendant Dorfman's testimony in which he states that all hours of dual service employees are combined. ECF No. 90 at 10 (citing ECF 88-5, Ex. 10, Dorfman Dep., Tr. 250:16-19). [3] Defendants have not pointed to any records supporting their position that they properly combined the hours worked by dual service employees. Defendants have failed to counter with any specific facts showing a genuine issue for trial, and a reasonable jury could not find for Defendants on this issue. Defendants failed to properly pay dual service employees.

### D.      Defendants violated Section 11(c) of the FLSA

Section 11(c) of the FLSA requires an employer to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time." 29 U.S.C. § 211(c). These records must include the hours worked each day, and the total hours worked each week. 29 C.F.R. § 516.2.

---

[3] Defendant Dorfman testified that a dual service employee's overtime rate is calculated by calculating an average overtime rate, combining the number of hours worked, and compensating the employees at one- and one-half hours over 40 hours worked. ECF 88-5, Ex. 10, Dorfman Dep., Tr. 250:20-251:10.

Defendant Dorfman admits that Prestige did not keep records of the time employees spent traveling between Prestige's clients on the same day, or between Prestige's office and Prestige's clients on the same day. ECF No. 86-3, CSSMF ¶¶ 29, 31. As discussed *supra* Section C(1), such travel time *does* constitute hours worked. The Court has previously held that failure to track compensable travel time of home healthcare employees constitutes a recordkeeping violation. *Walsh v. Successful Aging Care Net Inc.,* No. CV 20-2890 at 1 n.2 (E.D. Pa., Oct. 28, 2021); *see also Walsh v. East Penn Manufacturing Co.*, No. CV 18-1194, 2021 WL 3666177, at *113 (E.D. Pa. Aug. 18, 2021) ("[A]n employer commits a per se recordkeeping violation [ ] when its records are inadequate.").

There is no genuine dispute as to any material fact regarding Defendants' failure to keep records of travel time, in violation of Section 11(c) of the FLSA.

### E.  Defendants' overtime violations were willful

An employer willfully violates the FLSA if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988). A showing of egregiousness is not required in order to find that overtime violations were willful. *Stone v. Troy Constr., LLC*, 935 F.3d 141, 150 (3d Cir. 2019). Here, Plaintiff has set forth sufficient evidence showing that Defendants recklessly disregarded the matter of whether their practices were prohibited by the FLSA, and Defendants have failed to counter with specific facts showing a genuine issue for trial.

As an initial matter, and as discussed *supra* Section C, the FLSA requires employers to compensate employees for travel time, breaks of 20 minutes or less, and overtime when exceeding 40 hours in a weekly period (even when paid at two different payrates to a dual service employee). Further, the FLSA requires that an employer keep records of an employee's time spent working,

which includes compensable travel time. *See supra* Section D. Defendants concede that their employees are covered under the FLSA. ECF No. 90 at 2. Furthermore, Defendants were aware, before the 2017 investigation of Prestige performed by the Wage and Hour Division, that their employees were entitled to time and one-half their regular rate for hours worked over 40 in a workweek. ECF No. 86-3, CSSMF ¶ 32. In addition, during that investigation, Defendant Dorfman was provided with a home health guide explaining the application of the FLSA to home healthcare employers.[4] ECF No. 105, Feb. 14, 2023 Hr'g. Tr. 20:13-17.

It follows that, for the reasons discussed below, Defendants showed reckless disregard when they failed to seek the advice of the Department of Labor, any other governmental or regulatory body, accountant, or outside guidance to determine whether the practices of Prestige, an enterprise governed by the FLSA, complied with the FLSA. ECF No. 86-3, CSSMF ¶ 34.

First, Defendants showed reckless disregard as to whether Defendants' failure to compensate for travel time was prohibited by the FLSA. The FLSA states that "[t]ime spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked." 29 C.F.R. § 785.38. Defendants knew that their employees traveled between clients' homes on the same day, and/or between Prestige's office and clients' homes on the same day. ECF No. 86-3, CSSMF ¶¶ 26-27. In other words, as discussed *supra* Section C(1), travel is a necessary, integral, and indispensable part of a home health aide's job which necessarily takes place in various homes depending on the locations of their clients. Defendants knew that if their employees did not travel, then they could not provide their services of caring for clients in clients' homes. What is more, Defendants have known that they have taken

---

[4] The Court notes that travel time was not explicitly referenced in this Wage Hour Division guide. ECF No. 107.

a position as to travel time that is directly contrary to that of the Department of Labor. Defendants'

position inevitably affected overtime calculations and break time calculations. As such,

Defendants at least knew that a decision contrary to their position could be rendered, and despite

that, Defendants did not maintain proper records should the day come when it was decided that

the position Defendants took contrary to the Department of Labor was the wrong one. Instead,

Defendants have relied on their bald adamancy that their business model successfully provided a

carveout from FLSA requirements. Defendants' failure to at least maintain records during the

period when litigation on this issue was inevitable is a clear demonstration of reckless disregard.

Defendants now seek to use their failure to maintain proper records as a way of limiting their

damages and poking holes in Plaintiff's damages case instead of coming forward with precise

evidence—evidence which Defendants refused to create despite the clear anticipation of litigation,

and indeed, despite being within the very depths of that litigation.

Second, Defendants showed reckless disregard as to whether failure to compensate for

breaks of 20 minutes or less was prohibited by the FLSA. The FLSA states that short breaks must

be compensated. 29 C.F.R. § 785.18 ("Rest periods of short duration, running from 5 minutes to

about 20 minutes, are common in industry. They promote the efficiency of the employee and are

customarily paid for as working time. They must be counted as hours worked. Compensable time

of rest periods may not be offset against other working time such as compensable waiting time or

on-call time."). Defendants were aware of their employees' working hours, as the employees used

paper timesheets to record their hours worked. ECF No. 86-3, CSSMF ¶ 37. Specifically, the

employees wrote down the times they started and stopped working for their clients, after which

the timesheets were collected and verified by Prestige's coordinators who then entered the time

for billing. *Id.* ¶¶ 38-39. Therefore, Defendants had access to timesheets showing employees' short

breaks of 20 minutes or less between appointments with clients. Failure of an employer to follow the clear black letter law of the FLSA constitutes reckless disregard.

Third, Defendants showed reckless disregard as to whether Defendants properly compensated employees for overtime work. Defendants were aware that some employees worked more than 40 hours in a workweek (ECF No. 86-3, CSSMF ¶ 21), and that employees were entitled to time and one-half their regular rate for hours worked over 40 in a workweek. *Id.* ¶ 32. Further, the Wage and Hour investigation of Defendants that concluded on August 7, 2017 was resolved when Defendant Dorfman agreed to pay back wages owed to an employee who had been paid straight time for overtime (ECF No. 86-8, Tran Lavanture Declaration ¶ 7)—further evidence that Defendants had knowledge of the requirements of overtime compensation. As discussed, *supra* Section C(3), Defendants' records show that, for at least a portion of the relevant period, employees were only paid overtime after working 80 hours in a biweekly pay period, rather than after 40 hours in a workweek. ECF No. 86-16, Jamail-Gutierrez Declaration ¶ 6. That is, Defendants knew they were required to compensate for overtime work, but failed to do so.

Fourth, Defendants showed reckless disregard as to whether Defendants properly compensated dual service employees. Defendant Dorfman testified that dual service employees' overtime rates were calculated by calculating an average overtime rate, combining the number of hours worked, and compensating the employees at one- and one-half hours over 40 hours worked. ECF 88-5, Ex. 10, Dorfman Dep., Tr. 250:20-251:10. Defendants further cite case law upholding this method of payment calculation. However, Defendants' records show that Defendants did *not* actually combine the total number of hours to create a weighted number for calculation. ECF No. 86-16, Jamail-Gutierrez Declaration ¶ 9; ECF No. 86-23.

23

Fifth, Defendants showed reckless disregard as to whether they kept proper records. The FLSA states that an employer must "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time." 29 U.S.C. § 211(c). These records must include the hours worked each day, and the total hours worked each week. 29 C.F.R. § 516.2. As discussed, *supra* Section D, Defendants' failure to keep records of this travel time (ECF No. 86-3, CSSMF ¶¶ 29, 31) was a violation of the FLSA.

As such, no reasonable jury could find for Defendants on the issue of willfulness. Defendants showed a reckless disregard as to whether the FLSA prohibited: (1) Defendants' failure to compensate for travel time; (2) Defendants' failure to compensate for breaks of 20 minutes or less; (3) Defendants' compensation of employees who worked overtime; (4) Defendants' compensation of dual service employees; and (5) Defendants' recordkeeping practices.

### F.    Defendants are liable for back wages in the amount of $3,538,360.72 for the period of November 9, 2015 to May 27, 2022

Plaintiff has met her burden and submitted evidence sufficient to show that Defendants are liable for back wages in the amount of $3,538,360.72 for the period of November 9, 2015 to May 27, 2022. "In the absence of adequate employer records of employees' wages and hours, as required by the FLSA, the solution is not to penalize the employees by denying recovery based on an inability to prove the extent of undercompensated work, but rather to allow the employee or the Secretary to submit sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred." *Martin v. Selker Bros.*, 949 F.2d 1286, 1297 (3d Cir. 1991). If a plaintiff meets this burden of submitting sufficient evidence, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with

evidence to negat[e] the reasonableness of the inference to be drawn from the employee's evidence." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946).

Here, there is an absence of adequate employer records of employees' wages and hours: Defendants failed to separate employees' hours worked into individual workweeks (ECF 88-5, Ex. 10, Dorfman Dep., Tr. 204:25—205:4) and Defendants did not keep records of the time employees spent traveling between Prestige's clients on the same day, or between Prestige's office and Prestige's clients on the same day (ECF No. 86-3, CSSMF ¶¶ 29, 31). Therefore, Plaintiff has the reduced burden of submitting sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred. Plaintiff has met her burden.

Plaintiff used Defendants' pay and time records to compute the regular rate of pay for an employee for a bi-weekly pay period by dividing the total straight time compensation by the total number of hours worked. ECF No. 86-16, Jamail-Gutierrez Declaration ¶ 32. Plaintiff then used the amount of 11 dollars—the average of approximately 7300 regular rates—to calculate back wages. *Id*. Plaintiff computed unpaid overtime hours at a rate of $16.50—one and one-half of the reconstructed $11 regular rate. *Id.* ¶ 33. Unpaid half-time premiums were computed at $5.50—one-half of the reconstructed regular rate. *Id.* ¶ 36. Plaintiff then reasonably computed back wages due for the following: (1) uncompensated travel time; (2) uncompensated break time; (3) instances where an employee worked more than 40 hours in a workweek in a pay period in which they worked 80 hours or less resulting in unpaid half-time premium pay; and (4) unpaid half-time premium resulting from the failure to combine hours of dual service employees. ECF No. 86-16, Jamail-Gutierrez Declaration ¶¶ 34—38; ECF Nos. 86-17, 86-18, 86-19, 8-20 (collectively, Updated Back Wage Computations, DOL 185227). Plaintiff's process for calculating these damages was the very result of Defendants' failure to maintain records. Such calculations made

from representative evidence in light of missing employment records are sufficient. *See, e.g. Scalia v. Paragon Contractors Corp.*, 957 F.3d 1156, 1163 (10th Cir. 2020).

First, Plaintiff reasonably calculated the compensable travel time of employees. Investigator Jamail-Gutierrez reconstructed back wages for travel time using Defendants' billing software system to identify instances where employees worked at different worksites with different addresses on the same workday. ECF No. 86-16, Jamail-Gutierrez Declaration ¶ 13. Investigator Jamail-Gutierrez used Defendants' data of employees' clock-in and clock-out time, for the period of November 1, 2015 through May 29, 2022, to compute the difference in raw time between patient visits. *Id.* ¶ 17. This analysis was conducted on every time-punch of all 3.8 million Allegheny Report time records that Defendants produced. *Id.* ¶ 24. Investigator Jamail-Gutierrez then used Google Maps to generate a range of drive times between two locations, and ultimately used the lower drive-time range for the calculation. *Id.* ¶ 21. This analysis was conducted for approximately 20% of the 15,650 total trips. *Id.* ¶ 23. Investigator Jamail-Gutierrez's calculations incorporated time for walking to and from a vehicle, and time for traffic, resulting in an average time of 14.88 minutes. *Id.* ¶ 26. As a result, Investigator Jamail-Gutierrez used a 15-minute travel time cap, meaning that any break of 15 minutes or more between patients was calculated as a 15-minute break. *Id.* ¶ 18. For all breaks less than 15 minutes, the actual raw time between punches was used as travel time. *Id.* ¶¶ 19-20. Back wages were not computed for employees who were entitled to travel time compensation but whose hours did not exceed 40 hours in a workweek. *Id.* ¶ 28. Further, final back wage calculations were not included for employees whose total back wages owed were less than 20 dollars. *Id.* ¶ 29. The final back wage calculations did not include records where an employee's name was missing. *Id.* ¶ 30.

Second, Plaintiff reasonably calculated the compensation owed to employees for compensable breaks of 20 minutes or less. Plaintiff identified these uncompensated break times by identifying instances where 20 minutes or less elapsed between shifts at the same address. ECF No. 86-16, Jamail-Gutierrez Declaration ¶ 5. Back wages were not calculated for employees with uncompensated breaktimes whose combined hours worked did not exceed 40 hours in a workweek. *Id.* The Court finds that $2,629,634.86 in uncompensated travel time and break time, as calculated by Plaintiff, can be reasonably inferred from the sufficient evidence submitted. *See* ECF No. 86-16, Jamail-Gutierrez Declaration ¶ 38(c); ECF Nos. 86-17, 86-18, 86-19, 8-20 (collectively, Updated Back Wage Computations, DOL 185227).

Third, Plaintiff reasonably calculated proper compensation of employees who worked more than 40 hours in a workweek during a pay period in which they worked 80 hours or less, resulting in unpaid half-time premium pay. *See* ECF No. 86-16, Jamail-Gutierrez Declaration ¶ 8. Plaintiff identified these instances in which employees worked for more than 40 hours in a week without overtime compensation. *Id.* ¶ 7. The Court finds that $262,691.17 in back wages in unpaid half-time premium, as calculated by Plaintiff, can be reasonably inferred from the sufficient evidence submitted. *See* ECF No. 86-16, Jamail-Gutierrez Declaration ¶ 38(a); ECF Nos. 86-17, 86-18, 86-19, 8-20 (collectively, Updated Back Wage Computations, DOL 185227).

Fourth, Plaintiff reasonably calculated proper compensation of dual service employees who were not paid the correct FLSA halftime premium for all hours worked in excess of 80 in a single pay period, and by extension, over 40 in a single workweek. Investigator Jamail-Gutierrez "identified the workweeks in which employees worked more than 80 hours in a pay period to calculate those hours where half time premium is due." ECF No. 86-16, Jamail-Gutierrez Declaration ¶ 10. The Court finds that $647,457.01 in unpaid half-time premium to Defendants'

employees resulting from Defendants' failure to combine all hours worked in a single workweek can be reasonably inferred from the sufficient evidence submitted. *Id.* ¶¶ 38(b); ECF No. 86-18 (Updated Back Wage Computations, DOL 185227).

Because Plaintiff has met her burden of submitting evidence sufficient to reasonably infer the amount of an award, Defendants bear the burden of "com[ing] forward with evidence of the precise amount of earnings received and work performed . . . or with evidence to negate . . . reasonable inferences." *Selker Bros.*, 949 F.2d at 1297. Even evidence or calculations from an employer showing that the employer could arrive at estimates more favorable to the employer than to a plaintiff is not necessarily sufficient to negate a plaintiff's reasonable calculations. *See Paragon Contractors Corp.*, 957 F.3d at 1163 ("[The employer] has shown merely that it could arrive at estimates of hours worked more favorable to itself were it in the Secretary's position. That is both unsurprising and insufficient to negate the just and reasonable inferences arising from the Secretary's analysis. [The employer] has not shown that the Secretary's methods were so deficient that inferences arising from its analysis cannot be trusted.").

Defendants Prestige and Dorfman have not met this difficult burden. The Third Circuit has found that evidence, put forth by an employer, in the form of a spreadsheet reflecting invoices, tickets, logbooks, and paycheck stubs sufficiently negated the reasonableness of employees' FLSA damages calculations. *Beccerril v. Spartan Concrete Prod., LLC*, 798 F. App'x 719, 720 (3d Cir. 2020). Meanwhile, what Defendants propose is to merely poke holes in the manner and method in which Plaintiff went about calculating damages rather than come forth with their own records that they maintained to negate Plaintiff's calculations. At oral argument, Defendants' counsel argued, regarding Plaintiff's calculations, that "[n]o effort was put in to make a proper damage calculation" (ECF No. 105, Feb. 14, 2023 Hr'g. Tr. 29:21—22) and that either Plaintiff's expert misinterpreted

Defendants' records, or that "there was some sort of error that was ultimately corrected." *See id* at 15:2-4, 16:10-20. But Defendants have put forth no evidence to sufficiently negate Plaintiff's calculations, their expert report on damages having been excluded by the Court because the report was based on unfounded methodologies and legal conclusions. *See* ECF No. 110. Accordingly, Defendants are liable for Plaintiff's calculation of back wages in the amount of $3,538,360.72 for the period of November 9, 2015 to May 27, 2022.

### G.      Defendants are liable for an equal amount of liquidated damages

The FLSA provides for the payment of unpaid wages and the equivalent amount in mandatory liquidated damages when an employer violates the Act's overtime provisions. 29 U.S.C. § 216(b). The Secretary of Labor "need not establish an intentional violation of the Act to recover liquidated damages." *Williams v. Tri-Cnty. Growers, Inc.*, 747 F.2d 121, 129 (3d Cir. 1984). "[L]iquidated damages are compensatory, not punitive in nature," and are therefore presumptively awarded in FLSA actions. *See Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir. 1991). "[A] defendant employer bears the 'plain and substantial' burden of proving he is entitled to discretionary relief from the FLSA's mandatory liquidated damages provision." *Id.* A court may, in its discretion, decline to award liquidated damages when an employer has shown that (1) the act or omission giving rise to the action was in good faith; and (2) the employer had reasonable grounds for believing that his act or omission was not a violation of the FLSA. 29 U.S.C. § 260; *Am. Future Sys., Inc.*, 873 F.3d at 433. Defendants have not met their "plain and substantial" burden of proving that they are entitled to discretionary relief from liquidated damages. Accordingly, the Court grants summary judgment to Plaintiff on the issue of liquidated damages.

First, Defendants have not met their burden of showing that their failure to properly compensate employees was in good faith. "The good faith requirement is a subjective one that requires that the employer have an honest intention to ascertain and follow the dictates of the Act." *Am. Future Sys., Inc.*, 873 F.3d at 433 (internal quotation marks omitted). An employee need not show that an employer intentionally violated the FLSA, but rather "the employer must affirmatively establish that he acted in good faith by attempting to ascertain the Act's requirements." *Tri-Cnty. Growers, Inc.*, 747 F.2d at 129. "The fact that an employer has broken the law for a long time without complaints from employees does not demonstrate the requisite good faith required by the statute." *Id.* In *American Future Systems,* the Third Circuit upheld the district court's "logical result . . . of the entire record" and finding that the employer did not act in good faith when setting its break policy, even when the employer had sought advice of counsel, reviewed case law, reviewed the Department of Labor's website, and "tried to get as much guidance as he could from the Department of Labor." 873 F.3d at 434 (cleaned up).

Here, Defendants have stipulated that they *did not* seek the advice of the Department of Labor, any other governmental or regulatory body, accountant, or outside guidance to determine whether their policies and practices complied with the FLSA. ECF No. 86-3, CSSMF ¶ 34. Further, Defendants merely argue as to good faith that no evidence shows that Defendants "intentionally sought to violate the FLSA to avoid paying overtime," and instead pin any possible violation of the FLSA on potential "minimal administrative errors or mistakes resulting in overtime being underpaid." ECF No. 90 at 16. Defendants further write that it was "Prestige's company policy to pay all hours worked over 40 in a work week at 1.5 times the regular rate and they did just that." *Id.* However, as discussed *supra* Section C, Defendants did not do so.

Second, Defendants have not met their burden of showing that they had reasonable grounds for believing that their acts or omissions were not a violation of the FLSA. "Merely reviewing case law and looking at the DOL website does not establish that [an employer] acted reasonably" because such sources "would have informed [the employer] of [a] bright line rule . . . explicitly and repeatedly stated." *Am. Future Sys., Inc.*, 873 F.3d at 434 (finding that the employer did not act in good faith when the employer failed to compensate employees for breaks of 20 minutes or less). Here, there is no record evidence that Defendants even reviewed any materials to ensure compliance with the FLSA. Review of the FLSA and related sources would have informed Defendants of the bright-line rules, discussed *supra* Sections C and D, requiring Defendants to compensate employees for travel time, breaks of less than 20 minutes, overtime for hours worked over 40 hours per week, and dual service work using the weighted averages of the two payrates. Defendants argue that "[i]t was (and is) reasonable for Prestige to not pay home health employees for the time spent between client home visits when their principal activities cease," again relying on the inapposite *Bridges* case. ECF No. 90 at 16. Defendants' reasonableness argument refers to employees commuting to and from home, shopping, or traveling to a "voluntary shift"—with no mention of the travel time actually at issue here, which is that between job sites. *See id.* at 16-17. As discussed, *supra* Section C(1), it is in fact unreasonable for an employer of home health aides— an occupation that requires travel between clients—to *not* compensate for travel when travel is an essential part of the employees' jobs. At oral argument, Defendants further argued that their actions were reasonable because Defendants' employees were "paid in compliance with what the Department of Medicare and Medicaid reimburse the Defendants for." ECF No. 105, Feb. 14, 2023 Hr'g Tr. 30: 20-22; *see also id.* at 30:8-16. However, as the Court noted in its Order excluding the expert testimony of L. Lamar Blount, (ECF No. 109), the reimbursement schema of Medicare and

Medicaid are irrelevant to whether Defendants are required to compensate employees for travel time under the FLSA.

Furthermore, assuming that Defendants did not believe they were taking an untenable position by arguing that their business model permitted a self-created, self-serving carveout to allow nonpayment for the travel time of traveling home health aides, Defendants knew that the Department of Labor categorically did not accept this position, no matter how vehemently Defendants argued. Despite this knowledge, Defendants did not at least maintain records of travel time in the event their position was determined to be the wrong one. It was reasonably foreseeable that such a decision could be rendered on the undisputed, material facts of this case.

### H.     Defendants' violations warrant permanent injunctive relief

The Court has jurisdiction, for cause shown, to restrain violations of section 215 of the FLSA, including any withholding of payment of minimum wages or overtime compensation. 29 U.S.C. § 217. "The issuance of a permanent injunction in FLSA cases does not subject an employer against whom it runs to a penalty or a hardship since it requests him to do what the Act requires anyway—to comply with the law." *Dunlop v. Davis*, 524 F.2d 1278, 1281 (5th Cir. 1975) (cleaned up). "[A] court, in exercising its discretion, should consider: (1) the previous conduct of the employer; (2) the current conduct of the employer; and (3) the dependability of the employer's promises for future compliance." *Reich v. Petroleum Sales, Inc.*, 30 F.3d 654, 657 (6th Cir. 1994). As to the first factor, as discussed *supra* Sections C and D, Defendants' practices violate Sections 7(a) and 11(c) of the FLSA. As to the second factor, Defendants continue to violate the FLSA, Defendant Dorfman having admitted that Defendants have not changed their pay practices since the start of this investigation. ECF No. 30 (Dorfman Affidavit ¶ 5, dated Apr. 15, 2022) ("[A]ll of the employment and payment practices and policies to which Plaintiff claims are illegal have

remained the same from at least November 9, 2015 through the present."). As to the third factor, a permanent injunction is appropriate to ensure future compliance in light of Defendants' repeated unlawful conduct. Accordingly, Defendants' violations warrant permanent injunctive relief pursuant to 29 U.S.C. § 217.

**CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Summary Judgment (ECF No. 86) is granted, and Defendants' Motion for Partial Summary Judgment (ECF No. 88) is denied. Appropriate Orders will follow.

BY THE COURT:

/s/ Chad F. Kenney
_____

CHAD F. KENNEY, JUDGE

# EXHIBIT A

**U.S. Department of Labor**   Wage and Hour Division
Washington, DC 20210



**FLSA2020-19**

December 31, 2020

Dear **Name***:

This letter responds to your request for an opinion on the compensability of certain travel time. Specifically, you ask whether an employee who chooses to telework for part of the day and work at the office for part of the day, with sufficient time to perform certain personal tasks in between, must be compensated for travel time between her home and office under a number of different scenarios. We conclude that the time the employee spends on travel in these scenarios is not compensable.

**BACKGROUND**

You ask whether, under several different fact patterns, an employee who chooses to telework for part of the day and work at the office for part of the day, while completing personal tasks in between, must be compensated for certain intervening travel time. You give two examples to illustrate these fact patterns. Both examples involve an employee with a one-hour commute to and from her office who normally works Monday through Friday from 8:00 a.m. to 4:30 p.m. The employee does not perform any work during her commutes.

In your first example, the employee has a parent-teacher conference at her child's school from 1:30 p.m. to 2:15 p.m. She has received permission to attend the conference and then work from home rather than returning to the office. She leaves her office at 1:00 p.m., drives 30 minutes to the school, and meets with the teacher for 45 minutes; the travel time from the school to her home is 30 minutes. You ask whether the time spent driving from the office to the school and the school to home would be compensable depending on whether the employee:

- Immediately resumes working when she gets home;

- Devotes an hour to personal activities upon arriving home and then resumes working;

- Devotes two hours to personal activities upon arriving home and then resumes working; or

- Devotes at least an hour to personal activities before driving home, devotes at least another hour to personal activities upon arriving home, and then resumes working.

In your second example, the employee has a doctor's appointment from 8:30 to 9:15 a.m. The drive from her home to the doctor's office is 45 minutes; the drive from the doctor's office to the

employer's office is 15 minutes.  The employee has received permission to work from home before driving to her appointment and will work the rest of the day after the appointment at her regular office location.  You posit that the employee works at home from 5:00 to 6:00 a.m., is free to perform personal activities between 6:00 and 8:00 a.m., leaves for her appointment at 8:00 a.m., finishes her appointment at 9:15 a.m., and arrives (and begins working) at her office at 9:30 a.m.  At the end of the day, the employee commutes home from her office as usual, and performs no work either during the commute or after she arrives home.  You ask two related questions:

- Is the employee's one hour of travel time from home to the appointment and the appointment to the office compensable?

- Is the employee's commute time from her office to home, where she first began working that day, compensable?

**GENERAL LEGAL PRINCIPLES**

The Fair Labor Standards Act generally requires that an employee be paid at least a federal minimum wage for every hour that he or she works and be paid at one and one half times her regular rate of pay for each hour worked in excess of 40 in a single workweek.[1]  Whether an employee is "working" typically can be answered by determining whether her action is primarily for the benefit of the employer.[2]  An employee does not need to be paid for hours that she is off duty—that is, periods when she is completely relieved from duties and that are long enough to enable her to effectively use the time for her own purposes.[3]  Additionally, time an employee spends in normal commuting or ordinary travel from home to work and vice versa—that is, travel from home to work before the regular workday and travel from work to home at the end of the workday—is specifically excluded from compensable hours.[4]

"[I]n general, the period between the commencement and completion on the same workday of an employee's principal activity or activities" is considered compensable, a principle known as the continuous workday doctrine.[5]  An employee is generally not considered to be on duty, and the continuous workday doctrine does not apply, until she has performed her first principal work activity of the day—that is, her first task that is integral and indispensable to the duties that she was hired to perform.[6]  Unlike ordinary commuting time, travel that is part of an employee's

---

[1] 29 U.S.C. §§ 206–207.

[2] *Tenn. Coal, Iron, & Rail Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944).

[3] 29 C.F.R. § 785.16(a).

[4] 29 C.F.R. § 785.35.

[5] 29 C.F.R. § 790.6(b); *see IBP, Inc. v. Alvarez*, 546 U.S. 21, 28 (2005).

[6] *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 33 (2014).

principal activity, such as travel between different worksites between the start and the end of the workday, is considered part of the day's work and is compensable.[7]

**OPINION**

Based on the facts you have provided, we conclude that the travel time you describe is not compensable.

### A.  The employee's travel time is not compensable because she is either off duty or engaged in normal commuting.

In your first example, the employee's travel time once she leaves the office is non-compensable off-duty time.  Between the employee's leaving work at 1:00 p.m. and her resuming work at 2:45 p.m. at the earliest, her time is hers to do with as she pleases—she is no longer performing compensable work for the employer.  This remains the case whether she is traveling to a personal appointment, traveling from a personal appointment, having personal meetings, or performing other personal activities.  Though the off-duty regulation speaks of an employee who has been "definitely told in advance that … [she] will not have to commence work until a definitely specified hour,"[8] it applies with equal force here, where the employee may freely choose the hour at which she resumes working.  There is no question that such an employee is free to use her time effectively and for her own purposes before resuming work.[9]

We reach a similar conclusion regarding your second example: None of the employee's travel time is compensable.  The hour that the employee spends performing the principal duties of her job for the employer beginning at 5:00 a.m. is compensable work, just as it would be if the employee had performed that work at the office.  But at 6:00 a.m., she is off duty—she has a block of time to use effectively and for her own purposes.  Her time remains noncompensable until she reaches the office and resumes working at 9:30 a.m.  Finally, her commute from her office to her home following the conclusion of her workday is an ordinary work-to-home commute and is not compensable.[10]

### B.  The travel time is not compensable as worksite-to-worksite travel or under the continuous workday doctrine.

In neither example do we consider the travel between the employee's home, the personal appointment, and the employer's office to be compensable travel between worksites or to be compensable as a result of the continuous workday doctrine.

---

[7] 29 C.F.R. § 785.38.

[8] 29 C.F.R. § 785.16(a).

[9] *Id.*

[10] *See* 29 C.F.R. § 785.35.

First, the travel time is not compensable worksite-to-worksite travel.  Travel time must be counted as hours worked when it is part of an employee's principal activity, such as travel from worksite to worksite during the work day.[11]  But that is not what this travel is.  The employer is not requiring the employee to travel as part of her work; rather, she is traveling of her own volition for her own purposes during her off-duty time.

Similarly, the travel time here is not compensable under the continuous workday doctrine because, as explained above, it is off-duty time.  Our regulations contemplate that the period between an employee's first and last principal activities will "in general" be compensable.[12]  But they also explicitly state that when an employee is completely relieved from duty such that she can use time effectively for her own purposes, that time is non-compensable.[13]  As we have observed, the FLSA "recognizes that employment is a relationship both parties enter into for their mutual benefit," and, as such, "'employees' rights … are not always separate from and at odds with their employers' interests.'"[14]  When an employee arranges for her workday to be divided into a block worked at home and a block worked at the office, separated by a block reserved for the employee to use for her own purposes, the reserved time is not compensable, even if the employee uses some of that time to travel between home and the office.

Courts generally have reached the same conclusion when analyzing similar questions. For example:

- An employee's morning and evening commutes were not compensable, even though he performed various administrative tasks at home, when he was not required to perform such tasks immediately before leaving home or immediately after returning home.  He instead was free to "wake up early, check his email, synch his PDA, print a sales report, and then go to the gym, or take his kids to school, before driving to his first" worksite of the day.  And he similarly was not precluded from "leaving his last [site] of the day and going straight to a restaurant for dinner, or waiting until late at night to synch his PDA (as electronic records show[ed] he sometimes did)."[15]

- A traveling alarm installer's evening commute time was not compensable, even though he was required to upload data to a central work computer after finishing his last assignment of the day, where the only requirement was that he upload the data "any time between 7:00 p.m. and 7:00 a.m." and he was otherwise "completely relieved from duty"

---

[11] 29 C.F.R. § 785.38.

[12] 29 C.F.R. § 790.6(b); *see also id.* §§ 785.18–.19 (discussing rest periods and meal times).

[13] *See* 29 C.F.R. § 785.16.

[14] WHD Opinion Ltr. FLSA2020-16 (Nov. 3, 2020), quoting *Sec'y of Labor v. Bristol Excavating, Inc.*, 935 F.3d 122, 135 (3d Cir. 2019).

[15] *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).

4

and could use the time after his last installation of the day "effectively for his own purposes."[16]

- Investigators' commute time was not compensable, even though they were required to complete some preliminary work before leaving home for a surveillance site and to upload reports after completing the day's surveillance, where they could do the preliminary work the night before (and sometimes even earlier) and upload the reports at any time until the following morning.  That they were "not required to perform these activities 'at any specific time'" meant that they could "'use the intervening time for [their] own purposes'" and their commuting time was thus not compensable.[17]

- A retail representative's commute time was not compensable, even though she "undoubtedly perform[ed] some preparatory and administrative work at home, because she [was] able to perform these tasks from any number of locations and [was] free to schedule her time so as to 'use the time effectively for [her] own purposes[.]'"[18]

Several decisions that may appear to be to the contrary analyze situations in which employees were potentially required to perform work immediately before commuting to or immediately after commuting from a work site.[19]  Because you inform us that the employee is not required to perform her work at any particular time, we are not opining as to such a situation.  One court concluded that travel time may be compensable even if the employees were not required to perform work immediately before or immediately after their commute, but that opinion, unlike the four we cite above, did not consider the off-duty regulation—and its reasoning on this point does not appear to have been followed by any other courts.[20]

As the *Garcia v. Crossmark* court summarized, our conclusion that the employee's travel time is not compensable "follows inexorably" from the regulations.  If "taken to its logical conclusion," the proposition that the travel time is compensable:

> would demand that had [an employee] elected to prepare her materials every
> morning at four, rather than six, and then return to sleep before leaving for the

---

[16] *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1060 (9th Cir. 2010), quoting 29 C.F.R. § 785.16.

[17] *Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896, 917 (D. Minn. 2010), quoting, with alterations, *Rutti*, 596 F.3d at 1061, and citing 29 C.F.R. § 785.16(a).

[18] *Garcia v. Crossmark, Inc.*, 157 F. Supp. 3d 1046, 1049 (D.N.M. 2015), quoting 29 C.F.R. § 785.16 (alteration in quotation in original).

[19] *See Gomley v. Crossmark, Inc.*, No. 1:13-cv-420, 2015 WL 1825481, at *4 (D. Idaho Apr. 22, 2015); *Harris v. Reliable Reports Inc.*, No. 1:13-cv-210, 2014 WL 931070, at *5 (N.D. Ind. Mar. 10, 2014); *Bowman v. Crossmark, Inc.*, No. 3:09-cv-16, 2012 WL 2597875, at *8 (E.D. Tenn. July 5, 2012).

[20] *Dooley v. Liberty Mut. Ins. Co.*, 307 F. Supp. 2d 234, 244–45 (D. Mass. 2004) (considering 29 C.F.R. §§ 785.35 and 790.6 but not 29 C.F.R. § 785.16).

day, she would be entitled to compensation for the time she spent unconscious.... It simply cannot be the case that an employee is empowered unilaterally to convert her commute into compensable time merely by deciding to perform her daily routine in a particular manner.[21]

**CONCLUSION**

For these reasons, we conclude that when an employee (a) chooses to perform some work before traveling to the office or (b) chooses to perform work at home after leaving the office, and in either case has sufficient time in between her telework and office work periods to use effectively for her own purposes, the time she spends traveling between home and office is not compensable.

This opinion is based exclusively on the facts you have presented and on your representation that you do not seek this opinion for a party that WHD is currently investigating or for use in litigation that began before your request. This letter is an official interpretation by the Administrator of WHD for purposes of the Portal-to-Portal Act. This interpretation may be relied upon in accordance with section 10 of the Portal-to-Portal Act, notwithstanding that after any such act or omission in the course of such reliance, the interpretation is "modified or rescinded or is determined by judicial authority to be invalid or of no legal effect."[22]

We trust that this letter responds to your inquiry.

Sincerely,

*Cheryl McStanton*

Cheryl M. Stanton
Administrator

**\*Note: The actual name(s) was removed to protect privacy in accordance with 5 U.S.C. § 552(b).**

---

[21] 157 F. Supp. 3d at 1049–50.
[22] 29 U.S.C. § 259(a).

6

# EXHIBIT B

time generally does not need to be paid.

39- Q. If an employee provides services to multiple individuals during the workday and must travel between these worksites, does that travel time count as work time that must be paid?

A. Yes. Under the FLSA, employees who travel to more than one worksite for an employer during the workday must be paid for travel time between each worksite. If an employee works for two different employers, he or she does not need to be compensated for time spent traveling between the two employers' worksites.

40- Q. How is the travel time counted if an employee does not travel directly between the homes of two individuals receiving services?

Workers who travel to more than one worksite for an employer during the workday must be paid for travel time between each worksite; if the travel is not direct because the employee is relieved from duty long enough to engage in purely personal pursuits, only the time necessary to make the trip must be paid.

For example, Tiffany is a direct care worker who is employed by Handy Home Care Agency. She provides services to two of the agency's clients, Mr. Jackson, from 9:00am to 11:30am, and Mr. Smith, from 2:00pm to 6:00pm. Tiffany drives to the two different worksites which are 30 minutes apart. She leaves Mr. Jackson's home at 11:30am and goes to a restaurant for lunch, shops for herself, and then arrives at Mr. Smith's home at 2:00pm.

Because Tiffany is completely relieved from duty long enough to use the time effectively for her own purposes (i.e., lunch and shopping) not all of the time is hours worked. The 30 minutes required to travel between the two homes is hours worked and, as of January 1, 2015, must be paid by the Handy Home Care Agency even though Tiffany did not travel directly between consumers.

41- Q. If an employee provides assistance to an elderly person or person with an illness, injury or disability by driving or accompanying him or her to an errand or appointment, must that time be paid?

A. Yes. Under the FLSA, travel that is "all in the day's work" must be compensated. For example, if a domestic service employee drives an elderly person or person with an illness, injury or disability to a doctor's appointment or to the grocery store, that time is "all in the day's work" and must be compensated.

42- Q. If an employee travels to another city with an elderly person or person with an illness, injury or disability, must all the time spent traveling be paid?

A. The Department considers all travel that keeps an employee away from home overnight to be a special class of travel away from home. Travel away from home is work time to the extent that the travel cuts across the employee's workday. The travel is simply a substitute for the employee's other duties. A direct care worker who accompanies an elderly person or person with an illness, injury or disability on travel away from home must be paid for all time spent traveling during the employee's normal work hours. On the other hand, as an enforcement policy, the Department will not consider as work time that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile. However, an employee traveling as a passenger with an elderly person or person with an illness, injury or disability as an assistant or helper and "on duty" during the flight is working even though traveling outside of the employee's regular work hours.

43- Q. If an employee travels on a plane with an elderly person or person with an illness, injury or disability outside of the employee's normal work day and is required to assist the person only during